DANIEL L. BOYLE, Respondent, v. THE UNION PACIFIC RAILROAD COMPANY, a Corporation, Appellant.

No. 1424. (71 Pac. 988.)

1. **Amendment of Record.**
Cases appealed to the Supreme Court must be heard and decided on the record made in the trial court.

2. **Same.**
Constitution, article 8, section 9, provides that an appeal shall be on the record made in the court below, under such regulations as may be provided by law. Revised Statutes 1898, section 3286, requires the judge before whom a case has been tried to settle, sign, and certify to the bill of exceptions; section 3290 provides that where, for certain reasons, the bill of exceptions is not settled by the trial judge, it shall be settled and certified in such manner as the Supreme Court may direct; and Supreme Court Rule 25 provides that, where a trial judge is absent from the

State, or refuses to settle a bill of exceptions, it may be settled by a justice of that court. *Held*, that the Supreme Court can not allow amendments to be made to a bill of exceptions after it has been signed, certified, and allowed by the trial judge.

**3. Motion for Nonsuit: Specific Grounds Must be Stated.**

Where the question of plaintiff's contributory negligence was not made a basis for the motion for a nonsuit in the trial court, it can not be considered on appeal.[1]

**4. Injury to Employee: Defective Appliances: Duty of Master.**

A master owes his servant the duty of providing his machinery with the same kind of appliances, or appliances equally as safe, as those in general use by men of ordinary prudence who are engaged in the same kind of business.[2]

**5. Same.**

It is not only a master's duty to his servant to provide his machinery with reasonably safe appliances, but it is also his duty to use ordinary care in looking after, inspecting, and keeping them in repair.

**6. Same.**

Where a railroad company transferred a car used for the shipment of supplies to hotels along the route from the passenger to the freight service, it was its duty to provide it with necessary appliances ordinarily used on cars in the freight service to enable the employees whose duties required them to pass from one car to another while the train was in motion to do so without unnecessary risk or danger.

**7. Same: Facts Stated: Employee Not Guilty of Contributory Negligence as Matter of Law.**

While in the performance of his duty, a conductor of a freight train stepped on a brake in attempting to pass over a car, the brake being the only means of assistance to him, and was injured by reason of its being defective. *Held*, that he was not guilty of contributory negligence as a matter of law.

---

[1] Frank v. Mining Co., 19 Utah 35; 56 Pac. 419; McIntyre v. Mining Co., 20 Utah 323; 60 Pac. 552; Lewis v. Mining Co., 22 Utah 51; 61 Pac. 860; Wild v. Railroad Co., 23 Utah 265; 63 Pac. 886.

[2] Pool v. Southern Pac. Co., 20 Utah 210; 58 Pac. 326.

## 8. Same: Question for Jury.

Whether a conductor of a freight train, who was injured in passing along his train while in motion, was exercising due care and caution, *held*, under the facts, to be a question for the jury.

## 9. Same: Duty of Master to Promulgate Rules.

Where a master has a large number of persons employed, and the safety of the employment mainly depends on that all of the employees perform their duties at stated times and in a given manner, it is the duty of the master to promulgate and furnish the employees with suitable rules for their guidance and safety.[3]

## 10. Same: Violation of Rules as Defense.

A conductor was injured while running his train in violation of a rule governing the movements of the company's trains, but was doing so under a time order, which, in effect, authorized him to ignore the rules. The rule had never been observed when trains were run under time orders. *Held*, that the company could not interpose the violation of the rule as a defense to an action by the conductor.[4]

## 11. Appeal: Instructions: Exceptions.

Where error is assigned in the giving of certain instructions but the record fails to show that any exceptions were taken to them, the error will not be considered on appeal. BARTCH, J., dissenting.

(Decided March 27, 1903.)

Appeal from the Third District Court, Summit County.— *Hon. S. W. Stewart,* Judge.

Action to recover damages for personal injuries alleged to have been occasioned through the negligence of the defendant company. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

[3] Pool v. Southern Pac. Co., 20 Utah 210; 58 Pac. 326.

[4] Wright v. Southern Pac. Co., 14 Utah 383; 46 Pac. 374; Konold v. Railway Co., 21 Utah 381; 60 Pac. 1021.

*Le Grand Young, Esq.,* for appellant.

*W. L. Maginnis, Esq.,* and *A. J. Weber, Esq.,* for re-
spondent.

### STATEMENT OF FACTS.

On the 26th day of May, 1900, plaintiff was, and for
thirteen years prior thereto had been, employed by defendant
corporation as a freight conductor.   On the day in question
(May 26, 1900) he was in charge of a freight train consisting
of forty-four cars and a caboose.   The train was en route
from Ogden, Utah, to Omaha, Nebraska.   Attached to the
train, and immediately in front of the caboose, was what is
known as a "hotel supply" car, which was used to ship and
supply vegetables and meats to hotels along the railroad be-
tween Omaha and Ogden.   This car would not couple auto-
matically with the coupler on the caboose, which made it nec-
essary to couple it with link and pin, thereby making the
distance between it and the caboose so great that plaintiff and
other employees of the defendant company who were operating
the train could not step from the top of one car to the other.
It was without doors in the ends, and had no platform, end
ladders, grab or hand irons.   In fact, it was without any of
the equipments and conveniences necessary to enable plaintiff
and the other members of the train crew to pass through or
over it from the caboose to the other cars.   The car in ques-
tion was equipped for and belonged to the passenger service,
but was sometimes placed in and hauled with the freight cars.

Plaintiff left Ogden at about 4:10 in the morning, and
arrived at Echo at 10 o'clock a. m.   Having stopped at sev-
eral stations between the two points to load and unload freight,
he was behind time.   At Echo he received an order to meet
a certain freight train at Emory, the next station, which is
about nine miles east of Echo.   Being behind time, he also

got what is known as a "time" order, which informed him that two passenger trains coming west, and traveling at the rate of fifty or sixty miles an hour, would pass Castle Rock without stopping; one at 11:30 a. m., and the other ten minutes later. Castle Rock is the next station, and about six and one-half miles east of Emory. Plaintiff had the right, under this time order, to either side-track his train and wait at Emory until the passenger trains passed, or to go on to Castle Rock, provided he had sufficient time to make the run and side-track before the arrival there of the passenger trains. Plaintiff left Echo at 10:28, and it was agreed between him and the engineer that if they found the freight train they were to meet side-tracked at Emory they would go on to Castle Rock without stopping, as they would be compelled to stop over at Emory for twelve hours if they side-tracked there for the passenger trains, whereas by going on this delay would be avoided. They arrived at Emory at 11:04 or 11:05, and found the freight train side-tracked, and went on without stopping, expecting to reach Castle Rock before the arrival of the passenger trains which were to pass there at 11:30. The schedule time between Emory and Castle Rock for plaintiff's train was forty minutes, but, as will be observed, on this occasion he had but twenty-five or twenty-six minutes in which to make the run. According to his own testimony, this was "short time," even if his train met with no delays. A single stop, however short, would have made it impossible for him to get his train to Castle Rock before the arrival there of the passenger trains. The record shows that, while it was not compulsory for him to do so, yet under the time order he was expected to go on to Castle Rock, provided he could get his train there in time to clear the main track for the passenger trains. The record also shows that it was not only necessary, but the duty of plaintiff, the time being short, for him to be at the head of his train after it left Emory. Soon after passing Emory he started to go to the head of the train,

and in order to get on top of and over the hotel supply car, he set a hand brake that was at the end and attached to the car. The brake when set was held in place by a small piece of iron known as a "dog," which, as the brake was tightened, caught in the teeth of a ratchet wheel. Plaintiff, having no other means of passing over the car, stepped on top of the brake thus fastened, and placed his hands on the roof of the car, and was in the act of pulling himself onto the top thereof, when the brake on which he was standing came loose and turned, and, there being no grab or hand irons on the car for him to hold to, he was thrown from the train, and run over, which resulted in the loss of one foot and permanent injury to the other. On former occasions he had with safety and in the same manner climbed onto other cars constructed and equipped similarly to the one in question. One witness testified that soon after the accident he examined the brake, and found it to be so loose that the "dog" played back and forth over the ratchet wheel, and that the "dog" contained a small nick, that appeared to be an old defect, which defect added to the inefficiency of the brake.

The foregoing are, in substance, the facts relied upon by plaintiff for a recovery.

When plaintiff rested, defendant moved for a nonsuit in the following terms: "Comes now the defendant, and moves the court for a nonsuit in this case, for the reason that plaintiff has failed to sustain the allegations of the complaint in this: (1) That plaintiff has failed to show that he exercised due care, or was without fault, in attempting to cross from said caboose onto said supply car. (2) Plaintiff has failed to show that the failure to equip said car in the manner alleged in said complaint made the duties of said plaintiff extraordinarily hazardous or dangerous, and that said plaintiff was ignorant of said condition; and for the further reason that plaintiff has not established the fact that such danger was not so obvious that a reasonably prudent man, in the

exercise of such urgent duties as plaintiff was called upon to perform, would have undertaken to perform. (3) The plaintiff has failed to show any pressing or urgent necessity for plaintiff to go to the front of the train, and cross from said hotel car. (4) Plaintiff has failed to show that he had no other or safer means of crossing from one car to another. (5) Plaintiff has failed to show that said supply car was negligently or carelessly in a condition of disrepair, in this: That the dog which should have prevented the brake wheel upon which plaintiff stepped from turning and holding it fast was out of order, or so worn that it did not hold said wheel firmly, and permitted the same to turn when plaintiff stepped thereon, which was unknown to plaintiff, or could not have been discovered by him, and which was known or might have been known to defendant. (6) That the evidence shows that the brake wheel, dog, and ratchet were in reasonably good repair and order, and they would hold the brake when used for any use for which intended to be used. That the extraordinary use made by plaintiff of this brake was uncalled for and unexpected, and one that the brake was not calculated to sustain." The motion was overruled, to which ruling defendant duly excepted.

Defendant introduced testimony which tended to show that the brake on the car was in good order and repair at the time of the accident. It also introduced in evidence certain rules regulating the running and management of its trains, at the time of the accident. So far as material to this case, they are as follows: "Conductors and engineers will be held equally responsible for the violation of any rule governing the safety of their trains, and they must take every precaution for the protection of their trains, even if not provided by the rules." "Rule 90. No train must leave a station expecting to meet or to be passed at the next station by a train having the right of track, unless it has full schedule time to make

the meeting or passing point and clear the track by the time required by rule 86;" which provides that, "When a train of inferior class meets a train of superior class on a single track, the train of inferior class must take the siding, and clear the train of superior class ten minutes."

Mr. Knoder, who was the engineer on plaintiff's train at the time of the accident, and in defendant's employ at the time of the trial, was called as a witness for defendant, and on cross-examination testified as follows: "Q. Your attention has been called to rule No. 90. I will ask you whether that rule is observed by trains running on schedule time? A. No, sir. Q. How long has that condition of affairs existed, so far as you know? A. Always. Q. You said to Mr. Young that you had until 11:30 to make Castle Rock. Was that the instruction that you received in your time order? A. Yes, sir; as long as we had time to make Castle Rock by 11:30, it was our duty to do so. I have been an engineer about fourteen years."

The issues were tried by a jury, who returned a verdict for plaintiff, and assessed his damages at $10,000. Defendant appeals.

After the appeal in this case had been perfected, appellant made a motion, supported by affidavit of its counsel, to amend the record by including therein certain copies of requests for instructions to the jury made by defendant at the trial of the case and refused by the court, which requests were lost, and therefore were not made a part of the bill of exceptions; also to include in the bill of exceptions certain exceptions taken by defendant to instructions given by the court to the jury. It appears from the affidavit of the stenographer who reported the case that the exceptions appear in his stenographic notes, and were transcribed by him. The exceptions referred to were omitted from the bill of exceptions through the inadvertence and oversight of defendant's counsel,

and the mistake was not discovered until after the appeal was taken and appellant served with a copy of respondent's brief in the case.

MCCARTY, J., after stating the facts, delivered the opinion of the court.

It will be observed that appellant not only asked permission to amend the bill of exceptions by incorporating therein matters which appear in the reporter's transcript of the proceedings, and omitted from the bill of exceptions, but to substitute copies of papers that were lost before the bill of exceptions was prepared, and make such copies a part of the record on appeal. A judge before whom a case has been tried may, on a proper showing, allow copies of lost papers to be substituted and incorporated into the bill of exceptions, as the record shows was done in this case, together with other material matters that have been omitted; but this court possesses no such authority. Cases appealed must be heard and decided upon the record made in the court from which the appeal is taken. 3 Ency. Pl. and Pr., p. 502; Hayne, New Trial and Appeal, sec. 271; Elliott, App. Proc., sec. 206.

Section 9, article 8, of the Constitution of this State, so far as material here, provides: "From all final judgments of the district courts, there shall be a right of appeal to the Supreme Court. The appeal shall be upon the record made in the court below, and under such regulations as may be provided by law." The "regulations" are found in sections 3286-3290, Revised Statutes 1898. Section 3286 provides that the judge before whom a case has been tried must settle the bill of exceptions, and must sign and certify to the same. Section 3290 in part provides as follows: "If such judge, referee, or judicial officer before the bill of exceptions is settled, dies, is removed from office, becomes disqualified, is absent from the State, or refuses to settle the

bill of exceptions, or if no mode is provided by law for the settlement of the same, it shall be settled and certified in such manner as the Supreme Court may, by its orders or rules, direct." Rule 25 of this court, so far as material in this case, provides as follows: "If any judge before whom a cause has been tried or heard is absent from the State or refuses to settle a bill of exceptions, or if no mode is provided by law for the settlement of the bill of exceptions in any case, then the bill of exceptions may be settled, allowed and certified by the chief justice, or any one of the judges of this court." It will readily be observed that under the foregoing provisions of the Constitution and statute, and the above rule of this court, the amendment asked for by appellant can not be allowed. Aside from any constitutional or statutory restriction or court rules, it would not only be unfair to the trial court for this court to permit amendments to be made to bills of exception after they have been signed, certified, and allowed by the judge who tried the case, but such a practice, if followed, would open the way for vexatious delays, and in course of time lead to infinite confusion.

We will now consider the alleged errors as assigned by appellant in the order in which they are discussed in its brief.

Appellant's first contention is that the trial court erred in overruling its motion for a nonsuit on the ground that the evidence showed that plaintiff was guilty of contributory negligence, and that such negligence consisted in running his train between Emory and Castle Rock, at the time of the accident in question, in violation of the schedule and printed rules of the company, thereby creating the necessity, if any existed, for him to go from the caboose to the head end of the train. Counsel for the appellant has devoted much time and space in his brief to the discussion of this phase of the case. The motion for a nonsuit is not based on this ground. By referring to the motion, which

is set out in full in the statement of facts, it will be seen that contributory negligence is not made a basis for a nonsuit. This court has repeatedly held that a party moving for nonsuit is required to state in his motion the specific grounds relied on. Therefore we can not consider these alleged elements of contributory negligence, as they are raised for the first time in this court. Frank v. Min. Co., 19 Utah 35, 56 Pac. 419; McIntyre v. Ajax Min. Co., 20 Utah 323, 60 Pac. 552; Lewis v. Min. Co., 22 Utah 51, 61 Pac. 860; Wild v. Union Pacific R. Co., 23 Utah 265, 63 Pac. 886; Palmer v. Marysville Dem. Pub. Co., 90 Cal. 168, 27 Pac. 21.

It may be contended that, notwithstanding the motion for a nonsuit does not directly charge contributory negligence, it is inferred from the phraseology, as the last paragraph of the motion contains the following allegation: "That the extraordinary use made by plaintiff of this brake was uncalled for and unexpected, and one that the brake was not calculated to sustain." The trial court undoubtedly held this to be a sufficient allegation to raise the question of contributory negligence on the part of the plaintiff in using the brake as a substitute for a ladder to enable him to climb onto the car, as the order overruling the motion contains the following paragraph:

"The motion for a nonsuit in this case appears to be based upon two principal grounds. The one is that plaintiff in doing what he did assumed the risk. The other ground is that plaintiff was guilty of contributory negligence."

The trial court having treated the foregoing paragraph as an allegation of contributory negligence on the part of plaintiff in stepping on the brake referred to, we will, for the purposes of this case, adopt the same view.

The rule has become elementary that it is a duty the master owes to his servant to use reasonable care and prudence for his safety by providing the machinery in use with such appliances as will enable the servant with ordinary and rea-

sonable care on his part to perform the duties required of him without danger except as may be reasonably incident to the business or employment engaged in. That is, the master is required to provide the same kind of appliances, or appliances equally as safe, as those in general use by men of ordinary prudence who are engaged in the same kind of business. Bailey's Mast. Liab., pp. 15, 16, and cases cited; Shearman & Redfield, Neg., sec. 194; Pool v. So. Pac. Co., 20 Utah 210, 58 Pac. 326. It is not only the master's duty to provide his servants with reasonably safe appliances, but it is also his duty to use ordinary care in looking after, inspecting, and keeping them in repair. Shearman & Redf., Neg., sec. 195; Bailey's Mast. Liab., p. 101. Testing the facts in this case by the foregoing rules, we do not think that such a case of contributory negligence was made out as would justify a court in taking the case from the jury and granting a nonsuit.

When the defendant company transferred the car referred to from the passenger service to that of the freight, it was its duty to provide it with the necessary appliances that are ordinarily used on and attached to cars used in the freight department, and to use ordinary care in inspecting such appliances and keeping them in repair, so as to enable plaintiff and other employees of the company, whose duties required them to pass from one car to another while the train was in motion, to do so without incurring unnecessary risks, or exposing themselves to unnecessary dangers. The defendant having failed to provide such appliances, it can not, therefore, be held as a legal proposition that because plaintiff, while in the performance of his duties, attempted to pass over this car, and in so doing stepped on the brake—the only means at his command to assist him—he was guilty of contributory negligence. In view of all the circumstances leading up to the injury of plaintiff, as shown by the record, the question as to whether he used that degree of care and

Boyle v. Union Pac. R. R. Co.

caution that a man of ordinary prudence, understanding the hazard and dangers of the situation, would have used under the same or similar circumstances, was a question for the determination of the jury, in connection with the question of the alleged defect in the brake; and, if it was of such a character, that the company knew, or by the exercise of reasonable care would have known, of its existence.

It is urged that, independent of the question of the alleged contributory negligence of plaintiff in using the brake to climb onto the car, he is precluded from recovering in this case because in making the run from Emory to Castle Rock on the day of the accident he not only violated the schedule, but also the printed rules, of the company. The rule is well settled that when the master has a large number of persons employed, and the safety of the employment mainly depends upon all of the employees performing their duties at stated times and in a given manner, it is the duty of the master to promulgate and furnish such employees with suitable rules and regulations for their guidance and safety. Pool v. So. Pac. Co., supra, and cases cited; Bailey's Mast. Liab., p. 72. And the law holds the servant to a rigid observance of such rules, and especially so where the employment consists of operating and running numerous railroad trains, and the safety of the traveling public is also involved. There are, however, exceptions to this rule. When the master has habitually, either expressly or tacitly, sanctioned the violation of the rules, or for any reason suspended them, he can not interpose such violation to defeat a recovery. Wright v. So. Pac. Co., 14 Utah 383, 46 Pac. 374; Konold v. R. G. W. Ry. Co., 21 Utah 381, 60 Pac. 1021, 81 Am. St. Rep. 693; Fluhrer v. Ry. Co. (Mich.), 80 N. W. 23; Nichols v. Chicago Ry. Co. (Mich.), 84 N. W. 470. The undisputed evidence in this case shows that when trains were run in pursuance of time orders that paragraph No. 90 of the printed rules of the company—and the one mainly relied upon

by defendant to defeat a recovery—was not observed, and that this condition of affairs had always existed. And the record also shows that when a time order was issued to a conductor, and he had sufficient time to reach the stations covered by the order, it was his duty to do so regardless of the regular schedule. The plaintiff on a former occasion made the run from Echo to Castle Rock in twenty-five minutes. On the day in question, under the time order issued to him, he had twenty-six minutes in which to make the same run. The defendant, having by its own orders in effect authorized the plaintiff to ignore its rules, can not now be heard to complain of such violation.

Appellant assigns as error the giving of certain instructions to the jury by the court, and the court's refusal to give certain instructions asked for by defendant. We can not consider these alleged errors, as the record fails to show that any exceptions were taken to them.

We find no reversible error in the record. The judgment is affirmed. Costs to be taxed against the appellant.

BASKIN, C. J., concurs. BARTCH, J., dissents.