COLLINS, Respondent, vs. MINERAL POINT & NORTHERN RAILWAY COMPANY, Appellant.

*September 10—October 20, 1908.*

*Railroads: Injury to trainman from structure near track: Rule construed: Abrogation by habitual violation: Assumption of risk: Evidence: Instructions to jury.*

1. A rule of a railway company forbade trainmen to work on the side of cars or trains where there were buildings or other projecting structures. It then instructed them: "Always work on that side where there are no buildings or structures, and in getting on or off or riding on the side of moving cars, do so only at places where there are no obstructions alongside the tracks,

such as buildings, structures, lumber piles, etc., that will make such work hazardous." *Held* that, construing both parts of the rule together, it absolutely forbade trainmen to work or ride on the side of trains where there were any structures alongside the track, not merely when there were such structures as would "make such work hazardous" in the judgment of the particular employee who was doing the work. TIMLIN, DODGE, and KERWIN, JJ., dissent.

2. A trainman who knowingly disobeyed that rule and suffered injury by reason of that disobedience could not recover for such injury without showing that, in the due discharge of his duty, obedience was impracticable or that the rule had been waived or abrogated by habitual disobedience of the employees with knowledge and acquiescence of the company.

3. The habitual violation which would serve to abrogate the rule must have been violation by the defendant company's own employees, not violation by employees of another company from which the defendant had adopted the rule.

4. Where a trainman, while riding on the side of his train, was struck and injured by an ore bin near the track, the mere fact that he had frequently seen the bin and knew in a general way that it was located near the track was not sufficient to show, as matter of law, that he had assumed the risk, it appearing that he had never had occasion to examine its location closely or to take a car from it, and that it had been built only about two months, during about half of which time he was off duty.

5. The admission of evidence that there was ample room on defendant's grounds, so that the ore bin could have been placed two or three feet farther from the rail, was not error.

6. Where a special verdict is to be taken, the refusal of instructions suitable only to a case submitted for a general verdict is not error.

APPEAL from a judgment of the circuit court for Crawford county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

Action for personal injuries.

On and for some time prior to the 28th of September, 1905, the plaintiff, a man thirty years of age, was employed by the defendant as the conductor of a mixed freight and passenger train running between Mineral Point and the village of Highland, about thirty miles distant. This train

was the only train operated on the road, and left Mineral Point about 9 o'clock a. m., reaching Highland at 10:40 o'clock, and on its return left Highland at 2:20 o'clock p. m. and arrived at Mineral Point at 5:15 o'clock. There were three other persons constituting the train crew, viz., an engineer, a fireman, and a brakeman. For three miles after leaving Mineral Point this train ran over the tracks of the Chicago, Milwaukee & St. Paul Railway Company, but the balance of the distance over the defendant's own tracks. The train was generally composed of from one to eight or ten freight cars and a combination passenger coach. After reaching Highland the duties of the train crew were to spot the cars as required, and at about 1:30 o'clock p. m. it was their duty also to make up the return train. The tracks at the station in Highland run nearly east and west. Upon the south side of the track is the station house and upon the north side are two side-tracks. Along the north side of and near to the most northerly of these two side-tracks are several structures designed for use in loading or unloading cars, and among these are a coal shed, a cold storage warehouse, an elevator, and a small ore bin. The ore bin was the farthest east of these structures and was erected some months before the accident, and its south side was about twenty inches from the side of a standard box car as it passed. The plaintiff had seen it numerous times, but had not noticed its distance from the track. This northerly switch track joined the main track about 240 feet east of the ore bin.

On the day of the accident, September 28, 1905, the train crew was making up the train at Highland, under the direction of the plaintiff, preparatory to returning to Mineral Point. The engine backed in on the northerly side-track and was attached to four or five box cars and a cinder dump car, which last-named car was at the extreme west end. The intention was to draw the entire string of cars easterly onto the main track and then cut off a part of them, including the

dump car, and send them onto the main track, and return the remaining cars to the side-track. As the train started east the plaintiff directed the brakeman to go forward on the train so as to be ready to make the cut, while he himself intended to give the proper signals to the engineer or fireman, ride to the switch stand, and there get off and throw the switch. The switch stand was on the north side of the track. As the train proceeded the plaintiff was on the rear of the cinder dump car at first, but went forward, intending to swing himself on the ladder at the west end of the box car immediately ahead (which was a large refrigerator car), and then give the proper signal to the fireman in the engine and drop to the ground at the switch stand to throw the switch. The ladder at the west end of the refrigerator car was on the north side of the car, and the plaintiff reached it, seized the handhold, and swung himself out to get on the ladder just as he reached the ore bin, so that his back struck the southwest corner of the bin and he was knocked to the ground and one foot was partially crushed on the rail, thus sustaining a serious and permanent injury. The negligence claimed was that the ore bin was placed in dangerous proximity to the track and that plaintiff had not been informed of the danger.

The jury returned a special verdict by which they found that (1) the ore bin was placed unnecessarily so near the track as to be dangerous to a conductor or brakeman in the discharge of his duties; (2) that it ought to have been foreseen by the railway officials that an injury might probably occur to an ordinarily prudent trainman as a natural result of the position of the bin; (3) that the plaintiff while discharging his duty was knocked from the side of a car and his foot crushed; (4) that no want of ordinary care on plaintiff's part contributed to produce his injury; and (5) that his damages were $2,000. Timely motions were made for nonsuit and for the direction of a verdict for the defendant, but

both were overruled, and from judgment for the plaintiff on the verdict the defendant appeals.

*Calvert Spensley,* for the appellant.

*E. D. McGowan* and *Arthur M. Fisher,* for the respondent.

WINSLOW, C. J.   It appeared by the plaintiff's own evidence that he had worked as brakeman or trainman in the employ of various railroad companies since boyhood, and was well acquainted with the ordinary methods of performing such work as well as with the ordinary dangers.   For a considerable length of the time he was employed by the Chicago, Milwaukee & St. Paul Railway Company and was familiar with its printed rules, one of which, directed to all trainmen and switchmen, was as follows:

"(2) You are forbidden to work on the side of cars or trains where there are buildings, sheds, cattle chutes, or other projecting structures.   Always work on that side where there are no buildings or structures, and in getting on or off or riding on the side of moving cars, do so only at places where there are no obstructions alongside the tracks, such as buildings, structures, lumber piles, etc., that will make such work hazardous."

It further appeared without contradiction that the plaintiff was employed as conductor by the defendant company from January, 1905, when it first began to do business, up to the time of the accident; that the defendant company formally adopted the foregoing rule with other rules of the St. Paul Company at the very beginning of its active business, and gave notice to the plaintiff to that effect, and that the plaintiff fully understood that the rule was in force.

It will be noticed that the rule contains two separate and distinct clauses.   The first is an absolute command not to work on the side of cars where there are projecting structures of any kind; the second is an affirmative direction to work on the side where there are no structures, and to get on

or off or ride on the side of cars only where there are no ob-
structions alongside the tracks, such as buildings, structures,
lumber piles, etc., "that will make such work hazardous."
Doubtless both clauses must be construed together, and the
question is whether the rule so construed forbids trainmen
from working or riding on the side of trains where there are
any structures alongside the track, or only forbids them from
so working when there are such structures as "will make such
work hazardous" in the judgment of the particular employee
who is doing the work.   Unquestionably the latter construc-
tion would effectually emasculate the rule, and we cannot
consider it a reasonable construction.   The rule twice in-
structs the employee to work on the side where there are *no
structures,* once by negative and once by affirmative lan-
guage, and then proceeds to enumerate several things as be-
ing concrete examples of the kinds of obstructions which are
covered by the inhibition and which make such work hazard-
ous.   The plaintiff so understood the rule, as appears af-
firmatively from his testimony, for he testified on cross-
examination that it contained no exception allowing him to
judge whether the building would clear him or not, and that,
as the rules read, they forbade him to switch on that side.

With this construction there is no doubt from the evidence
that the plaintiff knowingly disobeyed a rule intended for
his protection and suffered his injury by reason of such dis-
obedience.   Under such circumstances he cannot recover un-
less he shows either that the rule is impracticable in the due
discharge of duty, or that it has been waived or abrogated by
habitual disobedience of the employees with the knowledge
and tacit consent of the master, or for such a length of time
that the master must be presumed to have become aware of
such disobedience and acquiesced therein.   *Holmes v. So.
Pac. Co.* 120 Cal. 357, 52 Pac. 652; 5 Thomp. Comm. on
Neg. § 5404, and cases cited.   In the present case we find
no evidence which would suffice to take to the jury the ques-

tion of impracticability. It was shown that the switch stand was on the north side of the track, and that it was more convenient to do the signaling to the engine from the north side of the train, and thus that it would take somewhat longer to perform the switching operation if the conductor rode on the south side of the car, but there was absolutely no evidence of impracticability, or that the plaintiff did not have ample time to perform the duty in hand in accordance with the provisions of the rule. As to habitual violation of the rule, almost all of the testimony on this point is to the effect that the employees of the Chicago, Milwaukee & St. Paul Railway Company were in the habit of violating the rule. This custom, even if proven, could not, of course, affect the defendant. The habitual violation which will serve to abrogate the rule must be violation by the defendant's own employees. We find no tangible evidence of any such habitual and open violation of the rule by defendant's employees known to and acquiesced in by the defendant's responsible officials, or existing for such a length of time as to raise a presumption of knowledge and acquiescence. A verdict should therefore have been directed for the defendant upon the evidence.

Some other errors are argued which may properly receive attention, as there must be a new trial of the case.

It is said, irrespective of the question of the rule, that the plaintiff assumed the risk because he had frequently seen the ore bin and knew in a general way that it was located near the track. He had never, however, had occasion to examine its location closely or take a car from it, and it had been built only about two months, during about half of which time the plaintiff was off duty. We are unable to say that there was assumption of risk proven as matter of law.

Testimony was received against objection to the effect that there was ample room on the defendant's grounds, so that the company could have placed the ore bin two or three feet fur-

ther from the rail. We see no good ground for the claim of error in this ruling. *Renne v. U. S. L. Co.* 107 Wis. 305, 83 N. W. 473.

A very large number of instructions were asked by the defendant and refused. While it is unnecessary to consider the question of the correctness of the rulings on these instructions, it may be proper to say that nearly all of them were instructions suitable only for a case submitted upon general verdict, and their rejection would not be error in any event.

*By the Court.*—Judgment reversed, and action remanded for a new trial.

TIMLIN, J. (*dissenting*). The rule of the defendant which it is claimed was in force and disregarded by the plaintiff is as follows:

"To all trainmen and switchmen: . . . (2) You are forbidden to work on the side of cars or trains where there are buildings, sheds, cattle chutes, or other projecting structures. Always work on that side where there are no buildings or structures, and in getting on or off or riding on the side of moving cars, do so only at places where there are no obstructions alongside the tracks, such as buildings, structures, lumber piles, etc., that will make such work hazardous."

Sec. 1816, Stats. (1898), as amended by ch. 448, Laws of 1903, provides that every railroad company operating any railroad which is in whole or in part within this state shall be liable for all damages sustained within the same by any of its employees without contributory negligence on his part when any such injury is caused by a defect in any locomotive engine, car, rail, track, machinery, or appliance required by said company to be used by its employees in and about the business of their employment, etc. No contract, receipt, rule, or regulation between any employee and a railroad corporation shall exempt such corporation from the full liability imposed by this section.

Without here further considering the effect of this statute

upon rules and regulations and their violation, I may call attention to the rule in question. It consists of two sentences. The first is a positive prohibition against working on the side of cars or trains where there are buildings, sheds, cattle chutes, or other projecting structures. The second sentence covers the act of riding on the side of moving cars. If the first sentence also covers that act, then these words in the second sentence are unnecessary and tautological. Rules of construction forbid us to so consider them. Consequently the first sentence of the rule does not relate to riding on the side of moving cars. General words in one part may be controlled and restrained by particular words in another. 2 Lewis's Suth. Stat. Constr. (2d ed.) p. 666, § 348, and cases in note 79; *Harrington v. Smith,* 28 Wis. 43.

Statutes should be so construed that effect may be given to all of their provisions, so that no part will be inoperative or superfluous, void, or insignificant. *Ill. Cent. R. Co. v. Chicago,* 138 Ill. 453, 28 N. E. 740; *Harrington v. Smith, supra; Battis v. Hamlin,* 22 Wis. 669. Special provisions relating to a particular subject control general ones to which they are repugnant. *Western Bank v. Tallman,* 17 Wis. 530. If the latter part of a statute be repugnant to the former part it must stand and as to so much repeal the former part. *Woodman v. Clapp,* 21 Wis. 353. This construction is rejected in the majority opinion upon the ground that such construction would emasculate the rule. This is to me a new law for construing statutes or writings. If the masculinity which it is so necessary to preserve is a trope for force or effectiveness, I ask forceful or effective for what? Must the rule be construed to be forceful or effective to defeat the right of the employee to recover? This defeat is an incident which the law attaches to intentional violation of the rule, but it was not the object of the enactment of the rule. The rule is just as forceful and effective as a direction of the mode in which to do the work under the construction here

given it as it is under that construction given in the majority opinion.  ·It is not so forceful or effective to defeat the right of the plaintiff to recover.   The viewpoint of the majority seems to me to subordinate the effectiveness of the rule as a direction for work, to its effectiveness as a means of relieving a master from liability.

Next, the first sentence of the rule does not govern this case, because the railroad company placed its switch target and handle on the forbidden side, and the plaintiff was absolutely required to go there and throw that switch in order to make the necessary movement of the train.   So far as this first sentence of the rule is concerned, the defendant is deemed to have waived all observance of the rule with respect to throwing that switch because it imposed upon the plaintiff the inconsistent duty of throwing the switch on the forbidden side.   *Brown v. L. & N. R. Co.* 111 Ala. 275, 19 South. 1001; *Boyle v. Union Pac. R. Co.* 25 Utah, 420, 71 Pac. 988; *Pa. Co. v. Roney,* 89 Ind. 453; *Hall v. C., B. & N. R. Co.* 46 Minn. 439, 49 N. W. 239; *Richmond & D. R. Co. v. Jones,* 92 Ala. 218, 9 South. 276.

Taking up the second sentence of the rule in question and giving it a fair and lawful construction, it will be seen that the employee is thereby ordered, first, to always work on that side where there are no buildings or structures, which is merely a repetition in another form of the order contained in the first sentence.   Then the employee is next ordered that in getting on or off or riding on the side of moving cars he must only do so at places where there are no obstructions alongside the track . . . that will make such work hazardous; that is to say, he is not absolutely forbidden in the last sentence, but he is to determine whether the obstructions, etc., are such as to make the work hazardous, and in that case he is forbidden to get on or off or ride on that side.

When the rules do not unconditionally command the doing or not doing of a particular act, but impose upon the

servant in its observance duties calling for the exercise of judgment, skill, and diligence on his part, the question whether an act of the servant is a violation of the rules is a question of fact. *Lake Shore & M. S. R. Co. v. Parker,* 131 Ill. 557, 23 N. E. 237; *Bucklew v. Cent. Iowa R. Co.* 64 Iowa, 603, 21 N. W. 103. This same rule has been adopted and followed by our court. *Colf v. C., St. P., M. & O. R. Co.* 87 Wis. 273, 58 N. W. 408; *Crouse v. C. & N. W. R. Co.* 102 Wis. 196, 78 N. W. 446, 778. See, also, a very complete note to *Bist v. L. & S. W. R. Co.* 8 Am. & Eng. Ann. Cases, 1, 21, where other authorities will be found. The case in question comes within the foregoing cases because it is only negligence to ride in this way if there are, to the knowledge of the plaintiff, obstructions, etc., alongside the tracks such as will make this riding hazardous. Anything less than this is not an intentional violation of the printed rule. In order that the violation of a rule be sufficient to charge the servant as matter of law with contributory negligence, that violation must have been intentional. This is the pivotal question in the case. Resolving this against the appellant, it follows that there was no prejudicial error in the admission of evidence or in the verdict, or in refusing the instructions requested. It seems clear to me that the judgment should be affirmed.

DODGE, J. I join in the foregoing dissenting opinion of Mr. Justice TIMLIN.

KERWIN, J. I concur in the foregoing dissenting opinion of Mr. Justice TIMLIN.