FLYNN, Respondent, vs. MODERN STEEL STRUCTURAL COMPANY, Appellant.

*February 26—May 14, 1912.*

*Master and servant: Injury: Negligence of master: Permitting customary use of unsafe methods forbidden by formal rules.*

1. In an action by an employee in an establishment for manufacturing structural steel work, for injuries received while helping to move a heavy viaduct arch by reason of the slipping of the chain by which the arch was being lifted, a finding by the jury that the employer negligently allowed an unsafe and improper method of shortening the lifting chain to be used in its shop is *held* to be sustained by the evidence.
2. If in such a case the employer had knowingly permitted the customary use in the shop of a method of shortening the chain which it knew or ought to have known to be unsafe, it was guilty of negligence, even though it had promulgated formal orders to adopt some other method.

APPEAL from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

Action for personal injuries. The defendant owned and operated a large establishment for the manufacture of structural steel work at Waukesha. The plaintiff, a young man twenty years of age, was employed as a helper about the shop, doing such work as he was directed to do, March 15, 1909. He had previously worked in various iron and bridge concerns for some months at a time during the greater part of the time for more than three years. He was seriously injured March 19, 1909, while engaged in assisting in the work of milling a heavy viaduct arch, by reason of the slipping of the chain by which the arch was being lifted. A number of grounds of negligence were alleged in the complaint, but on the trial all claims of negligence were eliminated save two, viz.: (1) failure to warn, and (2) allowing an unsafe method of shortening the lifting chain to be commonly used in the shop.

The jury returned the following special verdict:

"(1) Did the defendant negligently fail to furnish plaintiff a reasonably safe place to work?    A. No.

"(2) Did the defendant negligently fail to sufficiently warn and instruct the plaintiff as to the dangers incident to his employment?    A. Yes.

"(3) Did the defendant negligently allow an unsafe and improper method of chain shortening to be used in its shop? A. Yes.

"(4) Did the defendant negligently fail to furnish a reasonably safe chain for hoisting the spider that injured the plaintiff?    A. No.

"(5) If you answer 'Yes' to the first, second, third, and fourth questions, or to any of them, then was the negligence of the defendant with respect to any or all of the matters specified in the first, second, third, and fourth questions and the affirmative answer or answers thereto, or to any thereof, the proximate cause of plaintiff's injuries?    A. Yes.

"(6) If you answer 'Yes' to the fifth question, then state particularly the matter or matters which constituted such proximate cause.

"(a) The matter specified in the first question and in the affirmative answer thereto.    ———.

"(b) The matter specified in the second question and in the affirmative answer thereto.    Yes.

"(c) The matter specified in the third question and in the affirmative answer thereto.    Yes.

"(d) The matter specified in the fourth question and in the affirmative answer thereto.    ———.

"(7) Was the plaintiff guilty of any want of ordinary care on his part which proximately contributed to cause his injuries?    A. No.

"(8) Was the injury to the plaintiff caused wholly by negligence on the part of Robert L. Roberts, the operator of the rotary planer?    A. No.

"(9) What sum of money will compensate the plaintiff for the damages sustained in consequence of the injury suffered by him?    A. $7,200."

The usual motions by defendant to change the answers to the vital questions of the special verdict and for judgment

thereon, or, in the alternative, for a new trial, were made and denied, and judgment was rendered for the plaintiff on the verdict, from which judgment this appeal is taken.

For the appellant there were briefs signed by *Harper & McMynn,* and oral argument by *R. N. McMynn.*

For the respondent there were briefs by *Glicksman, Gold & Corrigan,* and oral argument by *W. D. Corrigan.*

The following opinions were filed March 12, 1912:

WINSLOW, C. J.   The only serious question presented on this appeal is whether there was sufficient evidence to justify the jury in finding that the defendant negligently allowed an unsafe and improper method of shortening the lifting chain to be used in its shop.    This question must be answered in the affirmative.

The circumstances of the accident were in brief these: The workmen were engaged in completing a very heavy iron or steel arch, which was one of thirteen to be used in viaduct construction, and in course of the work it was necessary to lift the arch by means of a large electric traveling crane and carry it to a certain planing or milling machine in order to plane off certain parts thereof.   The planer was located under a gallery in the shop, and for this reason it became necessary to shorten the chain used in lifting the arch.   The chain was fitted with a grab link at one end for the purpose of shortening it quickly.   This grab link was a very large, long link, with a long aperture large at the upper end and tapering to a small narrow slit at the lower end, the idea being that the chain could be at once shortened by bringing the body of the chain up through the link, in which position it would be securely gripped by the narrow part of the aperture in the grab link, if the part of the chain so passed through the grab link was carefully put below the link which was permanently attached to the grab link, so that the part passed through would be at the bottom of the narrow end of the grab link.   If, however,

the chain were simply passed through the grab link, leaving the link which was permanently attached to it at the bottom of the narrow end, there would be danger of the chain slipping by reason of the fact that it would not be at the bottom of the link, but near the middle where the aperture begins to enlarge. There was testimony tending to show that the latter, or unsafe, method of shortening the chain was used in lifting the arch at the time of the accident, and it is undisputed that as the arch was lifted after the chain was shortened the chain slipped and the arch sagged suddenly downward, and caught the plaintiff under one edge as he was engaged in performing his duty of steadying the arch during the process.

We have carefully examined the testimony to ascertain whether there was credible evidence tending to show that this latter, or unsafe, method of shortening the chain was frequently and customarily used in the shop with the master's knowledge, or for so long a time that the master's knowledge must be presumed, and find that there were several witnesses who worked for the defendant for various periods during the two or three years immediately prior to the injury when the grab-hook chain was in use, and who testified to seeing the unsafe method frequently used in the shop. These witnesses seem to be credible witnesses, at least there is nothing in the case which would justify the court in saying that they are not to be believed. So we come to the conclusion that there is sufficient foundation for the finding in question.

This conclusion really disposes of the case. If the defendant knowingly permitted a method of fastening the chain which it knew or ought to have known to be unsafe to be customarily used in the shop, it was undoubtedly guilty of negligence notwithstanding it may have promulgated formal orders to adopt some other method (5 Thomp. Comm. on Neg. § 5404; *Collins v. M. P. & N. R. Co.* 136 Wis. 421, 117 N. W. 1014), and if, as the jury found in the present case, the use of this method proximately caused injury to an employee

in the exercise of ordinary care, the liability of the defendant is established.

The remaining rulings complained of by the appellant do not seem to require detailed treatment. They have been carefully examined and are not deemed to be in any material respect prejudicial, even if it should be held (which it is not) that any of them were erroneous or doubtful. The issues in the case were in our judgment fairly tried and submitted to the jury, and the judgment must be affirmed.

*By the Court.*—It is so ordered.

TIMLIN, J. I concur in this decision because it appears to me that the business carried on by employer and engaged in by employee was of that hazardous nature in which the law imposes upon an employer the duty to make and promulgate rules for conducting the operations of the shop. This duty is not performed by mere perfunctory publication of rules, but some care and diligence is required in seeing that such rules are put into practice and not habitually disregarded. I do not think the rule of this case should be extended to include less hazardous occupations, because it trenches so closely upon the fellow-servant rule. The liability incurred under this rule seems also to differ from that incurred by knowingly retaining in the service an incompetent employee, in that in the latter case all the acts of negligence must have been those of one fellow-servant, while here they may be a series of negligent acts or omissions indulged in by several otherwise competent fellow-servants with the knowledge, actual or presumed, of the employer.

A motion for a rehearing was denied May 14, 1912.