TAYLOR vs. YOUNG.

*October 14 — November 6, 1884.*

TRESPASS: EVIDENCE: FENCES. *(1) Proof of time: Instructions. (2, 3) Trespass by animals: Partition fences: Burden of proof.* SUNDAY. *(4) Execution on week day of agreement made on Sunday.*

1. In an action of trespass an instruction that the plaintiff was bound to prove by a preponderance of testimony that the trespass was committed at the time testified to by him,— not allowing the jury to reconcile conflicting testimony upon the theory of a mistake of date, although the complaint was broad enough to embrace a time more in accord with the defendant's testimony,— is *held* erroneous.

2. The "lawful partition fences" which are required by ch. 307, Laws of 1880, to be maintained and kept in repair as a condition precedent to the recovery of damages for trespasses by animals, etc., are merely line fences complying with the requirements of sec. 1390, R. S., and it is immaterial whether or not they have been divided under secs. 1392, 1393, R. S. Evidence offered by the plaintiff in an action to recover such damages, to show that the line fence between his land and the defendant's, through which the animals passed, was "a legal fence kept up and maintained by the parties," should have been received, although, perhaps, the burden of showing that fact was not, in the first instance, upon him.

3. Ch. 307, Laws of 1880, has no reference to trespasses by animals passing through or over any fences other than strictly line fences.
4. Though the terms of the settlement of a claim for damages were agreed upon on Sunday, if it was afterwards executed and carried into effect on a week day it is valid and binding upon the parties.

APPEAL from the Circuit Court for *Jefferson* County.

The facts sufficiently appear from the opinion. There was a verdict for the defendant, and from the judgment entered thereon the plaintiff appealed.

For the appellant there was a brief by *L. B. Caswell* and *W. H. Rogers*, and oral argument by *Mr. Caswell*.

For the respondent there was a brief by *R. B. Kirkland* and *I. W. & G. W. Bird*, and oral argument by *Mr. G. W. Bird*. To the point that the agreement for the settlement of the trespasses committed in 1879, having been executed on a secular day, was binding upon the parties, they cited: *Moore v. Kendall*, 2 Pin. 99; *DeForth v. W. & M. R. R. Co.* 52 Wis. 320; *Melchoir v. McCarty*, 31 id. 256; *Myers v. Meinrath*, 101 Mass. 366; *Chestnut v. Harbaugh*, 78 Pa. St. 473; *Meriwether v. Smith*, 44 Ga. 541; *Ellis v. Hammond*, 57 id. 179; *Rosenblatt v. Townsley*, 73 Mo. 536; *Kinney v. McDermot*, 55 Iowa, 674; *Flinn v. St. John*, 51 Vt. 334; *Moseley v. Vanhooser*, 6 Lea (Tenn.), 286; *Van Hoven v. Irish*, 3 McCrary C. C. 443; *Willson v. Milligan*, 75 Mo. 41; *Harrison v. Colton*, 31 Iowa, 16; *Tucker v. West*, 29 Ark. 386.

ORTON, J. This is an action to recover damages committed upon the lands of the plaintiff by the trespassing animals of the defendant, between the 1st day of April, 1877, and the 30th day of August, 1882, inclusive. The first damage claimed was for the destruction of a field of clover by the defendant's sheep passing through the line or partition fence between the lands of the parties.

1. The plaintiff testified positively that the defendant's sheep did this damage in the spring of 1878, and his evidence was corroborated by other witnesses; and the defendant testified positively that he neither had nor owned any sheep in 1878, but that he owned sheep in the spring of 1877, and disposed of them during that season. The complaint charges the first trespass in the spring of 1877; and the plaintiff testified before the justice, in this suit, that this trespass by the sheep was in that spring, but on the trial in the circuit court he testified that he made a mistake in the evidence before the justice as to such trespass having been in the spring of 1877, and that he was positive that it was in the spring of 1878.

As to whether the defendant had or owned any sheep in the year 1878 the evidence was very conflicting. The testimony was such that the jury might have found that the sheep of the defendant did such damage, but could not have done it in the spring of 1878, or thereafter, but could have done it in the previous year, when the defendant had sheep, and not before. The testimony as to the year depended on the memory of the witnesses. If the testimony of the plaintiff that the defendant's sheep did such damage, and the testimony of the defendant that they did not do it in 1878, is to be believed,— and it would seem to be reliable,— the only way to reconcile it would be by inference that the plaintiff was mistaken in the year. A mistake of the date of the trespass would be much more likely and probable than a mistake as to the *fact* of the trespass. A mistake of date would be compatible with the intention of the parties to swear truthfully, when, if there were no such trespass at all, the plaintiff would be convicted of perjury. To reconcile, if possible, the testimony of both parties, so as not to involve false swearing or even a contradiction as to the main facts about which neither could well be mistaken, is the duty of both the court and jury. The

Taylor vs. Young.

learned circuit judge, in his charge to the jury, confined the plaintiff as to the first trespass to the year 1878 by the language, "The plaintiff must show by a preponderance of testimony that the defendant's stock trespassed upon him in the year 1878," and by other language of equivalent meaning. The jury were not allowed to believe and reconcile the testimony of both parties as to the main facts about which they had each testified, upon the theory of a mistake of date. The complaint embraced the year 1877, and within it, on the evidence, the jury might have found that the first trespass was committed in that year, or in the next; in one or the other, certainly, and in 1877 most probably. The precise date after April 1, 1877, was immaterial. The rule laid down was too strict, and made the mere matter of date have controlling weight in the case, when so fixed or admitted by the testimony of the plaintiff. The jury should have been left free to pass upon this question of date, from the whole evidence in the case, and from any reasonable inference and probability therefrom.

2. The plaintiff offered evidence to show that the line fences between his land and that of the defendant, through which the animals had passed, had been divided by a parol agreement between the parties before these trespasses were committed, which had been acted upon and carried out by them in maintaining such fences as legal partition fences of sufficient height and construction during all the time of such trespasses. The circuit court sustained the objection of the defendant to such evidence.

This evidence was presumably offered for the purpose of showing a compliance with ch. 307, Laws of 1880, which precludes a recovery of "any damages whatever for trespasses by the animals of owners of any adjoining lands with whom partition fences might have been maintained if such lands had been inclosed," by the "owners of such lands who do not maintain and keep in repair lawful partition fences."

The objection to this evidence was presumably made and sustained on the ground that said chapter requires, as a condition of recovery, that such partition fences or the lines thereof must have been partitioned or divided between the adjoining owners by such owners, "in writing, signed, sealed, and witnessed by two witnesses, or by the fence viewers, in writing, under their hands," etc., as required by secs. 1392, 1393, R. S. The contention of the plaintiff is that the law of 1880 had reference to a *lawful* fence between the adjoining owners, maintained and kept in repair by such owners according to secs. 1390, 1391, R. S., and makes a recovery for trespasses depend upon the *fact* that there is such a lawful fence, and that it is maintained and kept in repair by the adjoining owners, whether by agreement in writing or in parol. On the other hand, it is contended by the learned counsel of the defendant that said provision had reference only to a partition fence of lawful height and construction kept and maintained in equal shares by the adjoining owners, and partitioned and divided by the owners thereof in writing, signed, sealed, etc., according to said secs. 1392, 1393, and that such statutory method of making "legal and sufficient fences," and of keeping and maintaining them in equal shares, and of partitioning and dividing them between adjoining owners, is exclusive. It is argued that the object of ch. 307, Laws of 1880, as an amendment to sec. 1391, R. S., was to induce adjoining owners to comply with the statute in every respect in relation to line or partition fences, and that the object of the general statute was that the matter of line fences should not be left to the uncertainty of parol agreements, as a fruitful source of trouble and litigation between adjoining owners, but should be made the subject of agreements in writing, signed, sealed, and witnessed, or of adjustment by the fence viewers, to be matter of record.

These are strong reasons for such a construction of the

statute, if the language of the statute itself will allow it. Sec. 1390 provides only what "shall be deemed legal and sufficient fences." They are to be four and a half feet high, and in good repair, and of a certain construction. The language is as general and broad as it can be: "All fences [so constructed and kept in repair] shall be deemed legal and sufficient fences." The language of ch. 307, Laws of 1880, is, "maintain and keep in repair lawful partition fences;" and is not the same language as in sec. 1391, R. S., to which it is made an amendment, "shall keep and maintain partition fences," etc., "in equal shares," etc. The amendment is, "Owners of lands who do not maintain and keep in repair *lawful* partition fences shall not be entitled to recover," etc. "To maintain" and "keep in repair" are nearly equivalent expressions, so that the difference in the language is in the use of the word "lawful" to qualify partition fences in the amendment, and of the words "in equal shares," to charge each owner with a separate duty and individual liability, in the section amended. It will be observed that the amendment does not require a lawful partition fence to be maintained and kept in repair "in equal shares," and sec. 1391 does not require the partition fence to be a "lawful" fence. The amendment, though stated to be to sec. 1391, uses only the words "partition fences" of that section, and is substantially an amendment to sec. 1390, which defines a legal and sufficient fence generally, whether a *partition* fence or not. It follows that if the adjoining owners of land maintain and keep in repair a partition fence between them four and a half feet high, and of the construction required by sec. 1390, they may recover for trespasses by the animals of each other over or through such fences. For building and maintaining such a fence no agreement in writing is required; nor for maintaining and keeping in repair such fence "in equal shares." The last clause of sec. 1391 is significant as to such an agreement: "Such fences shall be kept in good

repair throughout the year, unless the occupants of the lands on both sides shall otherwise mutually agree."

There is nothing in the language of these two sections, or within their object, reason, or intent, requiring any such agreements to be in writing, even. Secs. 1392 and 1393 have quite another purpose or design, and that is, to make a permanent partition of the partition fence, or of the line upon which partition fences are to be built between adjoining owners. This is a different kind of "partition" fence than the one entire fence between the owners. It is a partition or division of that fence between the owners, for each to keep and maintain, by agreement in writing, signed, sealed, and witnessed, or by the determination of fence viewers, to be made a matter of record, by which such owners, their heirs and assigns, shall be obliged to keep and maintain each his division thereof according to said partition.

Whether such a partition of a line fence could be made by an oral agreement so as to bind the parties need not be determined, for that question is not in the case. The owners can recover from each other if they have a lawful partition fence, maintained and kept in repair; otherwise, they cannot. The law of 1880, which prohibits a recovery unless such a lawful partition fence is maintained and kept in repair, is a concession of the right of recovery, if such lawful partition fence is maintained and kept in repair, whether such fence is divided or partitioned between the owners under secs. 1392, 1393, or not. This being the only reasonable and natural interpretation of these statutes, from their plain and unambiguous language, the cases cited on either side from states not having the same statutes are not authority; but some of them will be noticed as bearing upon the question of the legal effect of oral agreements in respect to line fences, and as throwing some light upon the general subject. Whether such oral agreements in respect to the building and maintaining line fences, and the division thereof, may be en-

Taylor vs. Young.

forced when *executory*, is not a question pertinent to this case.

The only question is whether, when such fences are so built and maintained of the character required by the statute, a recovery may be had for damages by trespassing animals. Was the fence such a fence, in fact, at the time of the trespasses? This is the only condition precedent to a recovery, as we understand the statutes. Was a lawful partition fence maintained and kept in repair by the parties on the line over which the trespassing animals passed to do the damage? The condition of recovery is not whether such lawful partition fence has been lawfully divided. A similar construction of the statute was made by this court in *Pitzner v. Shinnick*, 41 Wis. 676, only in that case the question was whether the trespassing animals passed over that part or division of the partition fence required to be maintained and kept in repair by the plaintiff. Under the statute of 1880, and in this case, the question is whether the trespassing animals passed over any part of the partition fence which was a lawful fence, and maintained and kept in repair by the parties, whether that fence had been lawfully divided or not, or whether it was kept and maintained in equal shares or not. But this is repetition, and the distinction is certainly clear enough without it. The effect of the decision of this court in *Roach v. Lawrence*, 56 Wis. 478, is to sustain this view of the law of 1880.

In the case cited by the learned counsel of the appellant, of *Tupper v. Clark*, 43 Vt. 200, the action was predicated upon the failure and neglect of the defendant in keeping in repair that part of the partition fence which it was his duty to keep in repair, by virtue of a parol agreement between the former owners of the land, and which had been recognized by the parties as obligatory upon them; and it was held that it was the duty and obligation of both parties to keep their respective divisions of the fence in repair, accord-

ing to said agreement, until such agreement had been repudiated. In that state, at the time, there was in force a statute similar to ours, providing for a division of partition fences in writing and of record. This action is in trespass *quare clausum*, and to avoid the prohibition of the statute of 1880 against his recovery the plaintiff offered to show that the parties had maintained and kept in repair a lawful partition fence between them, over which the defendant's animals had passed. That case, however, is much in point as to the effect of a parol agreement for the division of line fences in raising a duty or obligation of the parties to keep in repair their respective divisions of it, a neglect of which would impose a special liability. The case of *York v. Davis*, 11 N. H. 241, is to the same effect. It would seem that there was a general statute regulating line fences, and a statute prohibiting a recovery when a lawful partition fence is not kept in repair, in force in Indiana; and the construction placed upon them in *Cook v. Morea*, 33 Ind. 497, was the same as that above indicated of our own statute similar in terms. The action in *Colden v. Eldred*, 15 Johns. 220, was in trespass, and it was held that it was incumbent upon the defendant to show that the animals got over that part of the fence which it was the plaintiff's duty to keep in repair.

In the state of Illinois there were, as in this state, full statutory regulations of line fences; but it was held in *Scott v. Wirshing*, 64 Ill. 102, that there was no provision requiring such a fence to be of any particular height, but only that it should be "a good and sufficient fence," and that if the plaintiff satisfied the jury that the fence was good and sufficient, he would be entitled to recover. The case of *Wills v. Walters*, 5 Bush (Ky.), 351, cited by the learned counsel of the respondent, would seem to hold that the plaintiff could recover if he proved a lawful fence according to the statute, or if he proved a division fence which the defendant was bound to keep in repair. As to the *division* of

fences, this case may be authority that such division must be made according to the statute; but, as to a lawful fence, it is authority that, if the plaintiff proved that the defendant's cattle came into his inclosure over such a fence, he could recover, whether there had been any lawful division of it or not, as we understand the case, which is but very briefly reported. The other authorities cited by the learned counsel of the respondent go to the exclusiveness of the statutory mode of dividing partition fences, and, as we have seen, are not applicable.

Therefore, that part of the offer made by the plaintiff relating to a parol division of the partition fence was immaterial to the case; but he also offered to prove that such fence was "a legal fence kept up and maintained by the parties," and that was material and necessary to a recovery. This being an ordinary action of trespass, it would seem to have been sufficient for the plaintiff to have proved the trespass, and let the defendant set up, if he wished, the prohibition of the statute, and prove that the partition fence over which his cattle passed was not a lawful fence maintained and kept in repair by the parties, as in *Colden v. Eldred, supra.* But the question was as well raised by the plaintiff offering to show a lawful partition fence maintained and kept in repair as a condition of recovery. The rejection of this evidence was clearly error.

3. The plaintiff requested the court to charge "that if they find the settlement which the defendant claims was made of the trespasses in the year 1879 to the corn and oats, was made on Sunday, such settlement is not binding and you are at liberty to disregard it, although the oats were delivered in pursuance of the settlement." This request was refused. The instruction asked on this point, standing by itself, is equivocal, and might imply that the oats were *delivered,* in pursuance of the settlement, likewise on the Sabbath. But, in connection with the evidence, it

must mean, "although the oats were *afterwards delivered* on *a week day*, in pursuance of the settlement," for such was the only evidence. The evidence tended to show that the parties met in the field when the damage was done in 1879, and went through the oats and corn both, and talked over the damage, and the defendant was to give the plaintiff six bushels of oats for it. This was on Sunday. Sometime afterwards, and on a week day, the defendant sent the oats to the plaintiff, and he received the same, as he testified, "in pursuance and performance of the settlement," but, as another witness testified, "in full settlement of the damage." The instruction asked must be taken in connection with this evidence, and, if so taken, was properly refused. This settlement, whether fully made or fully performed and executed on a week day, was valid. *Moore v. Kendall*, 2 Pin. 99; *De Forth v. W. & M. R. R. Co.* 52 Wis. 320; *Blakesley v. Johnson*, 13 Wis. 530. The plaintiff contended that the damage to the corn was not settled, but only the damage to the oats. But the jury must have found, under proper instructions on that point, that the damage to both was embraced in the settlement, and we think the evidence justified such a finding.

4. The testimony tended to prove that the damage by the defendant's hogs, done upon the plaintiff's land in 1882, was done by them after passing through the plaintiff's fence along the highway. The circuit court, in effect, instructed the jury that this damage could not be recovered, because the line of partition fences between the parties had not been made lawful, and maintained and kept in repair and partitioned according to the statute, and because the statute of 1880 prohibits the recovery of any damages for trespassing animals through whatever fence they may have passed, unless such line or partition fences are so made lawful, maintained, and kept in repair, and divided according to the statute. Neither the general statutes in respect to line

Muster vs. The Chicago, Milwaukee & St. Paul R'y Co.

fences nor the act of 1880 have any reference to trespassing animals through or over any fences except strictly line fences, or any damages by such animals passing through or over such fences. *Myers v. Dodd*, 9 Ind. 290; *Scott v. Wirshing*, 64 Ill. 102. As to such trespasses, the parties are left to their common law remedies. These statutes only relate to partition or line fences between the parties or the adjoining owners of the land in their terms or intent.

The alleged error in the taxation of the costs is immaterial, as the above errors must work a reversal of the judgment, and a new trial must be had in the case.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.