O'DAY, Respondent, vs. MEYERS, imp., Appellant.

*November 18—December 5, 1911.*

*Vendor and purchaser of land: Evidence: Value of land: Price paid for other lands: Title: Tax deed: Judgment: Marketable title: Fraud: Representations as to value: Brokers: Agency for both parties: Sunday: Validity of contract: Delivery: Witnesses: "Adverse party:" Cross-examination: Appeal: Harmless errors.*

1. Upon the question of the value of a certain tract of land, testimony as to the price which had been paid for individual parcels of other lands, and the record of transfers purporting to show prices paid for other lands in the same town, were properly excluded.

2. In an action upon a land contract, where the vendor's title was put in issue by defendant but no defect specified, a tax deed fair on its face, issued to the vendor's grantor and recorded more than three years prior to the contract, together with a judgment, rendered in an action to quiet title founded upon such tax deed, declaring the title to be in the vendor's grantor, were conclusive as against the former owners of the land and all claiming through or under them; and the court properly excluded evidence to show that the vendor's grantor stood in such a fiduciary relation to the owner of the land that he could not take a tax deed thereon.

3. The title based on such tax deed and judgment was a marketable title.

4. Mere representations as to value, where the purchaser is presumed competent to judge thereof and has full opportunity to, and does, examine the property to be purchased, amount to nothing more than expressions of opinion and do not constitute false representations entitling the purchaser to a rescission, even though relied upon by him.

5. The evidence in this case is *held* to show that one who acted as an intermediary in the sale of land was not the agent of the purchaser, but of the vendor only, and that the purchaser knew that fact.

6. A land contract signed in duplicate on Sunday, but left in escrow to be delivered on Monday if, after investigation, the vendor should be satisfied of the vendee's financial responsibility, and delivered on Monday accordingly, was valid.

7. Where the vendor in a land contract, who had assigned his interest therein to plaintiff and guaranteed payment, was made a codefendant with the purchaser in an action to recover a balance due on the contract, and answered admitting all of the allegations of the complaint, the purchaser was entitled to cross-examine him as an "adverse party," under sec. 4068, Stats. (1898).

8. The term "adverse party," as used in sec. 4068, Stats. (1898), means a party whose interests are adverse to those of the party seeking to call him, and the fact that both may be named in the pleadings as plaintiffs or defendants is immaterial.

9. Although appellant was erroneously denied the right to call an adverse codefendant for cross-examination under sec. 4068, Stats. (1898), yet where he did in fact cross-examine such codefendant, covering the matters in controversy exhaustively and putting many leading questions, the error was not prejudicial, especially where the trial was before the court.

10. Where a party is cross-examined under sec. 4068, Stats. (1898), he is not to be re-examined by his own counsel at the close of such cross-examination, but may at the proper time be called as a witness in his own behalf.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This is an action at law to recover the balance due upon a contract for the purchase of certain lands in Wood county, Wisconsin. The complaint alleged the due assignment of the contract to the plaintiff and averred that all conditions precedent to be performed on his part had been performed; that he had tendered the defendant *Meyers* a good and sufficient conveyance of title to the land in question, but that *Meyers* had refused to perform his part of the contract, and that there was now due thereon the sum of $10,400 with interest. The defendant *Meyers* set up in his answer, among other defenses, that the contract in question was executed on a Sunday; that he had been induced by false and fraudulent representations on the part of his codefendant, Conway, to purchase the land. His answer also contained a general denial. The defendant Conway in his answer admitted each and all of the allegations

of the complaint to be true.   The parties waived a jury trial, and the court found, among others, the following facts:

The defendant Conway and *Meyers* entered into a written contract, dated May 16, 1908, for the sale by Conway to *Meyers* of a certain tract of land then owned by Conway. The contract was signed in duplicate by Conway and *Meyers*, and duly witnessed, on Sunday, the 17th day of May, 1908. These duplicate contracts, together with a check for $100 executed by *Meyers* to Conway and a promissory note executed by *Meyers* to Conway for $900, were delivered to one Miller, an employee of the First National Bank of Grand Rapids, Wisconsin, to be held by him until Monday, May 18, 1908, in order to enable Conway to make investigation as to the financial standing of *Meyers*.   After making such investigation Conway accepted the check of $100 and note for $900 as part payment of the purchase price of the lands, leaving a balance due thereon of $10,400.   He also received a duplicate of the contract from Miller at the same time he accepted the check and note.   On the same day Miller forwarded by registered mail to *Meyers* a duplicate of the contract, which was received by him on or about the 19th, and not later than the 20th, of May, 1908.   No false or fraudulent representations were made by Conway, or any person acting on his behalf or with his knowledge or consent, to *Meyers,* during any of the negotiations leading up to the purchase of the land. Before entering into the contract *Meyers* had full and fair opportunity to, and did in fact, make a full and thorough examination and investigation of the lands by personally viewing the same.   On June 20, 1908, Conway, for an adequate and valuable consideration of $10,382 then and there paid to him in cash and by a note, duly assigned, transferred and set over to the plaintiff all his right, title, and interest in the contract between himself and *Meyers*.   The plaintiff, *O'Day,* purchased the contract without any knowledge of the fact that it was signed on Sunday and without any knowledge whatso-

ever of any infirmity existing therein. The defendant Conway and plaintiff have fully performed all the conditions on their part to be performed, and plaintiff has duly tendered to the defendant *Meyers* a conveyance of said lands by instruments (executed by Conway and wife) in form as prescribed in the contract, free and clear of all incumbrances whatsoever, subject to the performance of the conditions precedent upon the part of the defendant *Meyers* to be performed, which he has refused. On the 25th of August, 1908, the defendant Conway, for a valuable consideration and for the purpose of insuring and securing the plaintiff against loss by reason of the insolvency of the defendant *Meyers,* guaranteed in writing to the plaintiff the collection of the amount due under such contract from *Meyers.* The defendant *Meyers* has failed, neglected, and refused to pay the sum due under the terms of the contract, and there is now due the plaintiff from the defendant thereon the sum of $10,400 with interest upon said amount at the rate of six per cent. per annum from July 1, 1908.

As conclusions of law the court found that the plaintiff was entitled to judgment against the defendants, jointly in form, for the sum of $10,400 with interest as stated, and that the judgment should provide that execution issue against the defendants *Meyers* and Conway, but that the same should be first satisfied out of the property of the defendant *Meyers.* In case sufficient property belonging to *Meyers* to satisfy said execution should not be found, then the amount due upon the execution should be collected of and from the defendant Conway. From a judgment entered accordingly, the defendant *Meyers* appealed.

For the appellant there was a brief by *Perry, Morton & Kroesing,* and oral argument by *C. B. Perry* and *G. E. Morton.*

For the respondent there was a brief by *Daniel H. Grady,* and oral argument by *Mr. Grady* and *Mr. D. D. Conway.*

VINJE, J. Although the case was tried by the court without a jury, appellant assigns numerous errors relating to the admission and exclusion of testimony. Only three are deemed worthy of consideration.

After having introduced testimony as to the market value of the land, appellant sought in his evidence in chief to introduce testimony to show what price had been paid for individual parcels of other lands. The court excluded such testimony, stating that it might perhaps be properly received later in rebuttal, but was not competent as evidence in chief on his behalf. The exclusion of such evidence was not error. *O'Dell v. Rogers,* 44 Wis. 136; *Maxon v. Gates,* 136 Wis. 270, 116 N. W. 758. The court also properly excluded the record of transfers purporting to show the price for which other lands in the same town as that in question were sold. *Seefeld v. C., M. & St. P. R. Co.* 67 Wis. 96, 29 N. W. 904; *Esch v. C., M. & St. P. R. Co.* 72 Wis. 229, 39 N. W. 129.

Plaintiff alleged title in Conway, and appellant entered only a general denial to such allegation. He did not plead or point out in his answer any insufficiency in such title. The title shown by plaintiff rested not only upon deeds of conveyance from former owners, but upon a tax deed fair on its face, duly issued and recorded more than three years prior to the date of the contract in suit, and also upon a judgment afterwards entered in an action to quiet title founded upon said tax deed, in which the title was by the court declared to vest in Conway's grantor. The court therefore properly excluded testimony tending to show that the grantee in the tax deed stood in such a fiduciary relation to the owner of the land that he could not take a valid tax deed thereon. The judgment in the action to quiet title founded upon the tax deed was conclusive as to the title of the premises against the former owners of the land or any one claiming through or under them. The question sought to be raised by the testimony was forever set at rest by that judgment. *Marvin v.*

*Titsworth,* 10 Wis. 320; *Kane v. Rock River C. Co.* 15 Wis. 179. The title tendered constituted a marketable title and complied with the provisions of the contract of sale. *Maxon v. Gates,* 136 Wis. 270, 116 N. W. 758.

The finding of the trial court to the effect that no false or fraudulent representations were made by the defendant Conway inducing the appellant to purchase, is vigorously assailed. There is ample evidence to sustain the court's finding. The only representations claimed to have been false and fraudulent were statements made by the defendant Conway to the effect that the land in question was worth from $20 to $25 per acre. The appellant examined the land personally, and testified that when he was there viewing it he saw no objection to it and expressed no dissatisfaction whatever concerning it. It is elementary that mere representations as to value, where the purchaser is presumed competent to judge thereof and has full opportunity to, and does, examine the property to be purchased, do not constitute false representations entitling the purchaser to rescind on that ground, even though relied upon by him. Such representations as to value constitute nothing more than the mere opinion of the seller. *Mamlock v. Fairbanks,* 46 Wis. 415, 1 N. W. 167; *Maltby v. Austin,* 65 Wis. 527, 27 N. W. 162; *Mosher v. Post,* 89 Wis. 602, 62 N. W. 516; *Farr v. Peterson,* 91 Wis. 182, 64 N. W. 863; *Forest L. Co. v. Hanley,* 94 Wis. 23, 68 N. W. 413.

Appellant also claims that one Bolzendahl acted as his agent, and that, without his knowledge, he was also the agent of the defendant Conway, who paid him $50 after he had procured a purchaser for him, and that therefore the contract is void because contrary to the provisions of sec. 4575*m,* Stats. (Supp. 1906: Laws of 1905, ch. 129, sec. 1). It does not become necessary to consider whether or not, if the facts were as claimed by appellant, the contract would be void under the provisions of the statute referred to, because the evidence is

entirely barren of any proof that Bolzendahl was the agent of appellant. In his amended answer he alleges "that this defendant went in the company of one F. W. Bolzendahl, who acted as the agent of said defendant Conway, as defendant is informed and verily believes, in procuring this defendant to go to Grand Rapids to consider said matter;" and on the trial appellant testified, "Mr. Bolzendahl called on me about May 7th or 8th. I could not tell now, on a day, and told me that he had a friend up at Grand-Rapids that had some land for sale at a bargain. He said 'the land was worth between $25 and $35 an acre, and he asked me to find a purchaser for him, and I think that we better go up to look at the land.' He said it could be gotten for $17.50 an acre. He says that he came to me to advise me to go up there with him. He asked Bolzendahl to find a purchaser for him. And he wanted me to go up and look at the land." The only basis for a claim that Bolzendahl acted as the agent for *Meyers* rests upon the fact that he was the brother-in-law of appellant and that they had sometime previously had business transactions with each other. In view of the allegations of the amended answer and the testimony of the appellant upon the trial it is undisputed that Bolzendahl was the agent of Conway, and of him alone, and that *Meyers* was aware of that fact. Hence, even if Conway paid Bolzendahl $50 as a commission and not as a mere gratuity, as Conway claims, the validity of the contract would not be affected thereby.

It appears from the facts found by the court and the undisputed testimony that although the contracts were signed on Sunday they were not delivered until the following day. They, together with the check and note, were left in escrow with one Miller with directions to be delivered on Monday, only in case Conway, after an investigation, was satisfied with the financial responsibility of *Meyers*. It was therefore optional with Conway to accept or refuse the contract on Mon-

day, and it was equally optional with *Meyers* to do likewise, since the Sunday agreement was not intended to be consummated or completed till a delivery was made. A contract signed on Sunday but not delivered till a secular day is valid. *Farwell v. Webster,* 71 Wis. 485, 37 N. W. 437. So an agreement fixing the terms for a settlement of a trespass, though made on a Sunday, has been held to be binding upon the parties if executed and carried into effect on a subsequent secular day. *Taylor v. Young,* 61 Wis. 314, 21 N. W. 408; *Hopkins v. Stefan,* 77 Wis. 45, 45 N. W. 676; *King v. Graef,* 136 Wis. 548, 117 N. W. 1058. And where an organ, a book, and a stool were purchased on a Sunday and the organ delivered on the same day, it was held that a request by the purchaser on a subsequent secular day for the delivery of the book and stool, coupled with an expression of satisfaction with the organ, constituted a sufficient week-day acceptance to validate the purchase of the organ. *Schmidt v. Thomas,* 75 Wis. 529, 44 N. W. 771. It has uniformly been held elsewhere also that a contract entered into on a Sunday but delivered on a secular day is valid. *Harris v. Morse,* 49 Me. 432, 77 Am. Dec. 269; *Schwab v. Rigby,* 38 Minn. 395, 38 N. W. 101; *Barger v. Farnham,* 130 Mich. 487, 492, 90 N. W. 281; *Gibbs & S. Mfg. Co. v. Brucker,* 111 U. S. 597, 4 Sup. Ct. 572; *Beitenman's Appeal,* 55 Pa. St. 183. This is on the ground that a contract requiring delivery is not complete until delivery is made, and when that occurs on a secular day the contract, in contemplation of law, is made on that day.

The defendant Conway in his answer admitted all the allegations of the complaint. He was therefore not an adverse party to the plaintiff, though nominally appearing so in the pleadings. Appellant in his answer denied all the material allegations of the complaint. Under such circumstances Conway became in fact an adverse party to his codefendant, and the court erred in not permitting appellant to cross-examine

him as an adverse party under sec. 4068, Stats. (1898). In *Hunter v. Bosworth,* 43 Wis. 583, upon an appeal by certain defendants whose interests were adverse to those of their codefendants, it was held that the codefendants would, upon proper application, be treated as respondents in the action. And in *Rogers v. Shove,* 98 Wis. 271, 73 N. W. 989, where a mortgagor appealed from an order confirming a sheriff's report of sale on foreclosure, it was held that the purchaser was the principal adverse party and must be served with notice of the appeal under sec. 3049, R. S. 1878, providing for notice to "the adverse party." Sec. 4068, Stats. (1898), provides that "any party to the record in any civil action . . . may be examined upon the trial . . . as if under cross-examination, at the instance of the adverse party or parties or any of them." The term "adverse party" used in this section means a party whose interests are adverse to those of the party seeking to call him, and the fact that both may be named in the pleadings as plaintiffs or defendants is immaterial. The true test is, Are their interests adverse? *Crowns v. Forest L. Co.* 99 Wis. 103, 74 N. W. 546.

But the court informed appellant, when Conway was called as his witness, that he might put leading questions to him if he appeared hostile. An exhaustive examination covering all the main points in the controversy was gone into, and many leading questions asked the witness. Appellant did in fact cross-examine him, and hence no prejudicial error resulted. Especially must that conclusion be drawn in a case tried before the court.

Plaintiff was permitted to call Conway as an adverse party under the statute, and error is assigned because appellant was not allowed to examine him at the close of such cross-examination. It follows from what has been said that plaintiff had no right to call Conway as an adverse party. But no error is assigned on that ground, nor was it, under the circum-

stances of this case, prejudicial.    Where a party is properly called under the statute for cross-examination his counsel has no right to re-examine him at the close of such cross-examination.    The statute contemplates no re-examination; and if one were allowed, it would permit the adverse party to prove his case, or at least a portion thereof, as a part of the opponent's case.    Counsel can call him as his own witness at the proper time, and then examine him fully upon all the issues.

*By the Court.*—Judgment affirmed.