Guse, Respondent, vs. Power & Mining Machinery Company, Appellant.

*November 21—December 10, 1912.*

*Master and servant: Defective appliances: Personal injury: Negligence: Proximate cause: Concurrent causes: Evidence: Questions for jury: Adverse witness: Re-examination: Discretion: Appeal: Harmless errors: Presumed findings: Special verdict: Instructions to jury: Arguments of counsel.*

1. In an action for personal injuries caused by the breaking of an S-hook in raising a heavy sheet of metal, the testimony being conflicting as to whether the prior breaking of similar hooks had been under the same or under different circumstances and as to whether the hook in question was in its proper place at the time of the accident, these were questions for the jury.

2. Under such circumstances the breaking of the hook was a fact from which the jury might infer that it was defective or insufficient.

3. Standing alone, the breaking of the hook would not raise a presumption of negligence; but when this was supplemented by evidence that hooks of the same kind and make had frequently broken or bent under similar weights, that defendant's employees had been subjected to such danger for a considerable length of time, that such weakness in the hooks in all probability came to the knowledge of the defendant's superintendent, that the hooks were improperly made, and that there were indications of crystallization of the steel at the place of fracture,

there was sufficient evidence to go to the jury on the question whether defendant was negligent in furnishing such defective appliance.

4. Defendant not having requested the submission in the special verdict of a question covering its negligence in furnishing such defective hook, that question must be considered settled in the affirmative by the judgment in plaintiff's favor.

5. There being evidence of defendant's negligence sufficient to support a verdict for plaintiff without considering the question of the incompetence of defendant's servant who made the hook in question, errors assigned on the latter branch of the case may be disregarded.

6. In an action for injuries caused by the breaking of an S-hook used in raising a heavy sheet of metal, evidence as to the tensile strength of the iron in such hook is of little value, because where the force is applied in a different manner and direction from that employed in determining the tensile strength, the tenacity varies without any consistent ór constant proportion to such tensile strength.

7. Where an employee of a defendant corporation is called and examined by plaintiff as an adverse witness on the trial, under sec. 4068, Stats. (Laws of 1911, ch. 291), the defendant has a right to re-examine such witness immediately thereafter as to all matters tending to explain or qualify the testimony already given, or may ask the witness questions proper for the purpose of impeachment, upon a statement that it does not thereafter intend to make the witness its witness. *O'Day v. Meyers*, 147 Wis. 549, modified.

8. The scope of such re-examination is largely in the discretion of the trial judge, but it should not be extended so far as to cover new matter constituting part of the defense.

9. The erroneous denial of the right of re-examination of an employee of a party called and examined as an adverse witness under sec. 4068, Stats., is not ground for reversal where it is apparent from the record that such ruling could have had little, if any, effect on the result.

10. A judgment will not be reversed for the erroneous admission of irrelevant evidence, or even of incompetent evidence, unless it affirmatively appears that the appellant has been prejudiced thereby.

11. A judgment in an action founded on negligence may properly be sustained upon a verdict finding two proximate causes. Both will be treated as proximate and concurrent unless the evidence forbids; and if the evidence shows that one is proximate and the other remote and indirect or even no cause at all, the true

proximate cause will support the judgment and the other finding be rejected as surplusage.

12. If the evidence shows that neither of the causes found is the proximate cause, the judgment cannot stand except in a case in which the uncontradicted evidence shows the true proximate cause, or a case in which the matter was not brought to the attention of the trial court and in which, in support of the judgment, a finding of proximate cause will be presumed to have been made by the court, under sec. 2858m, Stats. (Laws of 1907, ch. 346).

13. Where, in connection with a question of the special verdict as to whether a certain appliance was safe, the court charged that to hold it defective the jury must find not only the defect but that the employer had reasonable ground to apprehend that an injury might result therefrom to an employee, the error was not prejudicial to defendant, because the charge was so inapplicable to the narrow question submitted that it could not have affected the answer, and because in any event it was favorable to defendant.

[14. Whether the meaning and scope of such question could properly be enlarged by instruction so as to cover both the physical condition of the appliance and the negligence of the defendant, not determined.]

15. For counsel, in arguing to the jury upon a special verdict, to say they should or ought to answer the questions in a certain way, is not misconduct calling for a reversal.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Connell & Weidner,* attorneys, and *Glicksman, Gold & Corrigan,* of counsel, and oral argument by *W. L. Gold.*

TIMLIN, J. The complaint in this action contained numerous charges of negligence. Among them may be found averments which, under the liberal rule of pleading now existing, support the verdict. The verdict was as follows:

"(1) Was the 'S' hook which broke at the time of the injury to plaintiff, October 11, 1909, an unsafe appliance for the use and purpose to which it was put? *A.* Yes.

"(2) If you answer question 1 'Yes,' then answer: Ought the defendant in the exercise of ordinary care and prudence to have reasonably anticipated that some injury might probably result from the use of such hook?   A. Yes.

"(3) If you answer 1 and 2 'Yes,' then answer: Was the use of such hook the proximate cause of plaintiff's injuries? A. Yes.

"(4) Was the breaking of such hook at the time of the injuries to plaintiff a pure accident?   A. No.

"(5) Was William Bunty incompetent to make proper and suitable hooks for use in the manner in which the hook which broke was used at the time of the accident?   A. Yes.

"(6) If you answer the fifth question 'Yes,' then answer: Did defendant know of such incompetence?   A. Yes.

"(8) If you answer question 5 'Yes' and either 6 or 7 'Yes,' then answer: Was such incompetence of William Bunty the proximate cause of plaintiff's injuries?   A. Yes.

"(9) Ought the plaintiff in the exercise of ordinary care to have anticipated that the use of such hook might probably result in an injury?   A. No.

"(10) At what sum do you assess plaintiff's damages? A. $6,500."

Fifteen errors are assigned, ten of them relating to rulings on evidence, one to refusal to direct a verdict for defendant, one to misconduct of counsel in argument, one to the form of the special verdict, one to the instructions, and one to the denial of a motion for a new trial.

There is no controversy in the evidence with reference to the manner of plaintiff's injury or with reference to the direct physical cause of such injury.   A large piece of sheet steel six feet in width by fourteen feet in length and weighing about 1,000 pounds, and perforated along the edges with bolt or rivet holes, was passed between rollers which changed it from a flat plane to the segment of a cylinder.   This segment was removed from the place of this operation by that mechanical device known as a crane.   Two appliances called S-hooks were hooked into a ring or rings suspended from the crane, and the lower end of each S-hook hooked into a rivet hole on

opposite sides of the segment, which was then lifted by the crane and carried to its place of destination.    These S-hooks were so called because they had a crude resemblance to the letter S, in that the upper and lower hooks were bent in opposite directions.    They were made out of soft, round rod steel five eighths of an inch in diameter, were heated and bent into this shape by Mr. Bunty, one of defendant's workmen, who was not a blacksmith and had little or no knowledge of the properties of iron or steel, and they were hooked into the curved sheet about to be lifted by the plaintiff and Mr. Bunty. After the curved sheet was raised and while it was suspended on these hooks one of the hooks broke and the sheet of iron fell on plaintiff, injuring him severely.    The broken S-hook was in evidence, and there was testimony that at the point where it broke there was evidence of crystallization and that similar hooks had frequently either broken or bent in this and similar operations at defendant's factory while lifting similar weights.    Ganon, who was defendant's superintendent at the time, says that the former breaking of the hooks was not under similar circumstances, but that they broke in turning sheets over before the bevel shears.    This was, however, a question for the jury.    The hooks were not inspected or tested in any way after being bent and before being used. There is evidence that the hooks were in their proper place at the time the hook broke, although there is considerable evidence from which the contrary inference might be drawn. This was also a question for the jury.

The breaking of the hook under these circumstances was a fact from which the jury might infer that the hook was defective or insufficient for the purpose for which it was used. *Klitzke v. Webb,* 120 Wis. 254, 97 N. W. 901; *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277, 71 N. W. 434.    Cases may be found which go further and hold that negligence may be presumed from such fact.    But, standing alone, the breaking of the hook does not raise a presumption of negligence.

*Spille v. Wis. B. & I. Co.* 105 Wis. 340, 81 N. W. 397; *Hupfer v. Nat. D. Co.* 114 Wis. 279, 90 N. W. 191; *Tiborsky v. C., M. & St. P. R. Co.* 124 Wis. 243, 246, 102 N. W. 549.

·When this evidence is supplemented by evidence that hooks of the same kind used in the same factory while lifting similar weights under the same or similar circumstances frequently gave way by bending or breaking, then from both there is evidence tending to establish negligence on the part of the master by continuing to use⁻ such insufficient and defective appliances. *Revolinski v. Adams C. Co.* 118 Wis. 324, 95 N. W. 122. We may therefore say that evidence that the hook was defective must be supplemented by evidence showing negligence on the part of the defendant. This latter may be supplied by evidence tending to show that such hooks broke frequently or bent under similar weights and that the employees had been subjected to such danger for a considerable length of time. *Fleming v. Northern T. P. Mill,* 135 Wis. 157, 175, 114 N. W. 841. There was also evidence tending to show that such weakness in hooks of this size and make in all probability came to the knowledge of defendant's superintendent; that the hooks were improperly made; and that there were indications of crystallization of the steel at the place of fracture.

So, without going into the question of the incompetency of Bunty, there was evidence, proper to be submitted to the jury, on the question whether the hook was defective and also whether the defendant was negligent in supplying the plaintiff with this defective appliance. There was therefore no error in refusing to direct a verdict for defendant. There was no request by defendant to submit in the special verdict a question covering defendant's negligence in respect to furnishing the unsafe appliance, so that must be considered settled in the affirmative by the judgment. There being in the case sufficient to support the verdict without considering the question of the incompetence of Bunty or its effect in producing

the plaintiff's injuries, the errors assigned on this latter branch of the case must be disregarded as nonprejudicial.

Much testimony was given on both sides relative to the tensile strength of iron of the size and quality of the bar out of which these hooks were made. It is of little or no value in this case because not supplemented by testimony showing the relation between tensile strength and the strength of an open hook supporting the weight at the middle of the bend of the hook. Obviously the degree of curvature of the hook, the uniformity of the curve, and the distance of the rivet hole into which it was hooked from the nearest edge of the sheet attempted to be lifted, are factors in the result which affect and displace the factor of tensile strength to a greater or less degree. The greatest longitudinal stress a substance can bear without tearing asunder is the measure of its tensile strength or tenacity. Where the external force is applied in a different manner and direction the tenacity varies without any consistent or constant proportion to the tensile strength. There was no necessary or logical connection between the tensile strength of the iron out of which the hook was made and the carrying strength of the hook.

The trial court accepted too literally the language of the opinion of this court in *O'Day v. Meyers,* 147 Wis. 549, 133 N. W. 605, and when one of the employees of the defendant was called by the plaintiff as an adverse witness under the provisions of sec. 4068, Stats. (Laws of 1911, ch. 291), and examined by plaintiff's counsel, the court refused to permit any re-examination by defendant's counsel, apparently holding that if the latter desired the testimony of such witness he must call this witness as his own witness when his time came to put in evidence. This was too strict. Under such circumstances the defendant has a right to re-examine such witness immediately after the examination by plaintiff's counsel as to all matters tending to explain or qualify the testi-

mony already given, but not as to new matters not brought out by plaintiff's counsel and constituting part of the defendant's defense. So he may ask the witness questions proper for the purpose of impeachment upon a statement that he does not thereafter intend to make the witness his witness. The scope of such re-examination is largely in the discretion of the trial judge, but it should not be so extended in any case as to interject the defense into the plaintiff's case at this stage of the hearing. So far as *O'Day v. Meyers, supra,* may be understood to the contrary, it must be deemed modified by this decision. We are not, however, convinced that this erroneous ruling was prejudicial. Several witnesses of this kind were examined by plaintiff's counsel as adverse witnesses and immediately re-examined by defendant's counsel. The testimony given by the witness whose re-examination was excluded was cumulative and much weaker than that of some of the other witnesses who testified to the same point. When other like witnesses were called, re-examination by defendant's counsel was tacitly permitted, except in the case of the witness Kanter, where the learned circuit judge changed his ruling and permitted a re-examination. After this there was no attempt to recall for re-examination the witness in whose case the erroneous ruling was made. It would not do to reverse a judgment for a ruling which had so little apparent effect upon the result as that refusing to permit the re-examination of this adverse witness under the circumstances here shown. We perceive no error in the admission of evidence in the particulars in which error is assigned on this appeal, and it would be unprofitable to review the numerous assignments of error in detail. The rules relative to the admission of evidence are very liberal and enlightened, and judgments are not reversed for the erroneous admission of irrelevant evidence, or even of incompetent evidence, unless it affirmatively appears to this court that the appellant has been prejudiced thereby.

There was no error in submitting to the jury questions 1, 3, and 9 of the special verdict above quoted. The first and third were applicable to issuable facts in the case as made by the.pleadings and evidence. The ninth was applicable to the defense of assumption of risk. There was no evidence of contributory negligence in the case as distinguished from assumption of risk. It is argued that the third and eighth findings of the verdict establish two proximate causes of the same injury, hence the verdict is defective. Many cases may be found in this court where judgments were upheld upon such verdicts. *Flynn v. Modern S. S. Co.* 149 Wis. 457, 134 N. W. 1044, and *Driscoll v. Allis-Chalmers Co.* 144 Wis. 451, 129 N. W. 401, are instances, but not the only instances. There are good reasons for these decisions. They relate to several causes created by the defaults or delinquencies of the same defendant. When prejudicial error must be affirmatively shown by the appellant, manifestly this court must, unless the evidence forbids it, treat these several causes as proximate and concurrent. If they are not concurrent, and the evidence shows that one is proximate and the other remote and indirect or even not a cause at all, the true proximate cause will support the judgment and the other finding becomes innocuous as surplusage. If the evidence shows that neither is the proximate cause, the judgment cannot stand except in those cases in which the uncontradicted evidence shows the true proximate cause or in those cases in which the matter was not brought to the attention of the circuit court and in which the finding of proximate cause will be presumed to have been made by the court in support of the judgment under sec. 2858m, Stats. (Laws of 1907, ch. 346).

Some portions of the charge excepted to are erroneous, as the following, given with reference to the first question of the special verdict:

"If such employer could reasonably apprehend that injury might result to an employee in the discharge of his ordinary

duties through any such of the conditions described in the evidence, then such condition or conditions are unsafe, as the word is used in this question."

The question related to the S-hook, not generally to "any such of the conditions described in the evidence." Condition or conditions described in the evidence might be unsafe without affecting the character of the hook as an unsafe appliance. Whether the employer in the exercise of ordinary care should have apprehended an injury to an employee affected, not the question of the safety of the appliance, but bore on the negligence of the defendant in using it, and the test of ordinary care is not whether one *could* apprehend an injury might result to some person, but whether an ordinarily prudent person under the same or similar circumstances, in the exercise of ordinary care, would have apprehended such injury. But this, we think, was not prejudicial because so inapplicable to the narrow question submitted to the jury by the first question of the verdict. It could not, we think, have affected the answer to that question. If it did, the error was against the plaintiff rather than against the defendant, because it advised the jury that in order to hold an appliance defective they must find not only the defect but that the employer had reasonable ground to apprehend that an injury might result therefrom to one of his employees.

It may be that the learned circuit judge intended that the first question should cover both the physical condition of the hook and the negligence of the defendant, and intended the word "unsafe" in the question to perform this double office. Whether he could legally do this we need not determine. To a certain extent the meaning and scope of a submitted question may be enlarged by the instructions, no doubt. Several cases in this court justify that conclusion. But it is doubtful whether that rule was ever applied to so extreme a case as this, where the first question is so narrow and restricted; and

the instruction would seek to import into it something apparently excluded by its terms.

We find no reversible error in the jury argument of counsel which defendant excepted to. His alleged transgression appears to consist of saying to the jury that they should or ought to answer the first three questions "Yes." We must presume that this was his view of their duty upon the evidence.

Other errors assigned have been considered and found not prejudicial.

*By the Court.*—Judgment affirmed.