DE VRIES, ·Guardian, Appellant, vs. DYE, Respondent.

*September 15—October 13, 1936.*

The cause was submitted for the appellant on the briefs of *George F. Lange* of Madison, and for the respondent on the brief of *La Follette, Rogers & Roberts* of Madison.

NELSON, J. This is an action for malicious prosecution. The plaintiff contends that the court erred, (1) in permitting the defendant's counsel to re-examine the defendant, called as an adverse witness, immediately following the conclusion of her examination by plaintiff's counsel, (2) in granting a nonsuit on the merits, and (3) in denying the plaintiff a jury trial.

In support of the first assignment of error, the plaintiff cites the case of *O'Day v. Meyers,* 147 Wis. 549, 133 N. W. 605. The law laid down in that case was modified in *Guse v. Power & Mining Machinery Co.* 151 Wis. 400, 139 N. W. 195. In that case it was said:

"Under such circumstances the defendant has a right to re-examine such witness immediately after the examination by plaintiff's counsel as to all matters tending to explain or qualify the testimony already given, but not as to new matters not brought out by plaintiff's counsel and constituting

part of the defendant's defense. . . . So far as *O'Day v. Meyers,* 147 Wis. 549, 133 N. W. 605, may be understood to the contrary, it must be deemed modified by this decision."

That rule was recently approved in *Leslie v. Knudson,* 205 Wis. 517, 521, 238 N. W. 397. We have read the examination of the defendant, called adversely for cross-examination, and the subsequent re-examination conducted immediately thereafter by her counsel. Numerous objections were made by plaintiff's counsel to the testimony sought to be adduced on the ground that it was hearsay or was too remote to have any relevancy to the issues litigated. Once or twice plaintiff's counsel objected to a question on the ground that it sought to adduce new, defensive matter and was not proper cross-examination. The record reveals that the court was familiar with the rule approved in the *Guse* and *Leslie Cases.* In our opinion the court did not permit the defendant's counsel to go beyond the reasonable limits of the rule in re-examining his client. It is our opinion that the court did not err in the respect asserted.

The plaintiff next contends that the court erred, (1) in finding that the defendant had probable cause for making the complaint, (2) in concluding that the proceeding upon such complaint was a civil action of such nature that no action for malicious prosecution could be based thereon, and (3) in concluding that the plaintiff failed to establish a want of probable cause in making the complaint. In our view it is unnecessary presently to determine whether an action for malicious prosecution may be grounded upon a complaint made under a city ordinance. Such actions are civil actions. *Oshkosh v. Schwartz,* 55 Wis. 483, 487, 13 N. W. 552; *Milwaukee v. Johnson,* 192 Wis. 585, 589, 213 N. W. 335; *Neenah v. Krueger,* 206 Wis. 473, 240 N. W. 402. Under certain circumstances, an action for malicious prosecution may be grounded upon a civil action. *Luby v. Bennett,* 111 Wis. 613, 87 N. W. 804.

If the court was right in finding from the undisputed facts that the defendant had probable cause for making the complaint, and that the plaintiff failed to establish that the defendant acted without probable cause in making the complaint, then the nonsuit was properly granted, since, in a malicious prosecution action, want of probable cause for making complaint or instituting an action is clearly one of the essentials. As was said by Mr. Justice DODGE, speaking for the court in *Small v. McGovern,* 117 Wis. 608, 614, 94 N. W. 651:

"It is elementary law that the action for malicious prosecution can be maintained only when the defendant was actuated by malice and acted without probable cause to believe the accused guilty." (Citing numerous prior Wisconsin cases.)

In *Eggett v. Allen,* 119 Wis. 625, 96 N. W. 803, and *Schwartz v. Schwartz,* 206 Wis. 420, 240 N. W. 177, probable cause was thus defined:

"Probable cause has been defined to be such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty."

It is generally held that whether a defendant acted upon "probable cause" or "without probable cause" is a mixed question of law and fact, and that if the facts are in dispute the determination of the facts under proper instruction of the court must be determined by the jury, but if the facts are undisputed the court should determine as a question of law whether the defendant instituted the particular action with or without probable cause. As was said by Mr. Justice MARSHALL in *King v. Apple River Power Co.* 131 Wis. 575, 111 N. W. 668:

"Whether there was probable cause in a case of this sort is solely a question of law for the court where the facts are undisputed. The province of the jury is to deal with the

controversy as to facts where there is a dispute in that respect, but such controversy being settled the ultimate question is for the court."

In *Leslie v. Knudson, supra,* it was said:

"The trial court took the undoubtedly correct view that where the facts are undisputed, probable cause [in a malicious prosecution action] is a question of law for the court."

See also 18 R. C. L. p. 58, § 39. It is there stated:

"The general rule of the common law, sustained by the overwhelming weight of authority, both in England and America, is that what facts, and whether particular facts, constitute probable cause is a question of law, which the judge must decide upon the facts found to exist in the particular case, and which it is error for him to submit to the decision of the jury. While the jury are to find what facts do exist, where the evidence is conflicting, the question of whether upon the facts as proved and found probable cause has or has not been made out is a question which the court must decide. For this reason probable cause has often been said to be a 'mixed question of law and fact.' If there is no dispute upon the facts, whether or not there was probable cause for the institution of the former proceeding is a question to be decided by the court alone." See also Wigmore, Evidence (2d ed.), p. 560, § 2553.

A careful reading of the testimony adduced reveals that there was no dispute as to the facts having a bearing upon the question of probable cause. So, under the established law, it was for the court to determine whether the defendant acted with or without probable cause.

The only question which we may consider is whether the court erred in finding and in concluding that the defendant acted upon probable cause. The undisputed facts are as follows: The defendant lives with her husband and children near to but within the southerly limits of the city of Madison. Arnold De Vries is an incompetent who resides with his wife, Mary De Vries, the plaintiff, who is his guardian.

The homes of the parties were separated by a single residence. The parties were not neighborly and for several years prior to April 21, 1934, maintained no friendly relations. The defendant, apparently, was interested in growing flowers in her yard. During all of the time that the defendant resided in that neighborhood, chickens occasionally invaded her premises and scratched in her flower beds. The chickens always came from the direction of the De Vries house and when chased ran away in that direction. Concededly, from time to time prior to February 11, 1934, the De Vries kept chickens upon their premises. In the fall of 1933, Mrs. De Vries complained to a son of the defendant, within the hearing of the defendant, that a dog belonging to the defendant was always chasing her chickens. The defendant was especially bothered by chickens during the summer and fall of 1933. On April 4th, chickens entered the defendant's yard and busied themselves in scratching in one of her flower beds, disarranging the mulch thereon. On that day the defendant complained to the police and asked what she could do to keep the chickens away from her premises. She was told that she did not need to do anything; that an officer would be sent out to attend to the matter. On April 20th, the defendant saw four chickens near her fence, one of which was scratching in her flower garden. The defendant thereupon called the police station and complained that "those chickens are running loose again." She was asked if she would sign a complaint. She replied that she would. A little later an officer appeared with a blank complaint which she signed. She inserted with a pencil the date that she saw the chickens on her property. The officer apparently took the complaint away with him and had it completed by filling in a formal charge under the ordinance which prohibits the owner of chickens from permitting them to run at large within the limits of the city of Madison. The officer did not explain to the defendant what would be

done with the complaint. She thought that they would tell them to keep the chickens shut up or to get rid of them. She did not know that such complaint would cause an arrest. She was not told so. The complaint was not filled in in her presence and she never appeared before the clerk of the superior court who purported to take her oath. A document denominated a warrant was served on Mr. De Vries the following day, and he was told to appear in superior court on the following Monday morning. The De Vries voluntarily appeared at that time and the action was continued. Mr. De Vries signed a personal bond for $25 to appear on the adjourned day. Later on, the city attorney called the defendant over the telephone and asked her if she could swear that the chickens belonged to the De Vries, and she told him that she could not, whereupon the city attorney asked her if she had any objections to the dismissal of the complaint. She said: "No, the chickens aren't running around now and they have cleaned out the place." The De Vries did not own any chickens during the month of April, 1934. The chicken which was doing the damage on April 20th probably belonged to a Mr. Schaefer, a neighbor of the De Vries. There was other testimony tending to show that the defendant in making the complaint was actuated by malice, and that the plaintiff's ward was unusually nervous and irritable for a time as a result of the action brought against him. It is our conclusion that since the facts were undisputed, it was for the court to determine as a matter of law whether the complaint made to the police officer (assuming for the purposes of this case that the complaint made constituted the institution of an action) was made upon probable cause and that its conclusion may not be disturbed.

The plaintiff's third contention is that the court, in granting the defendant's motion for a compulsory nonsuit, denied her the right to a trial by jury. That contention, in our opinion, is without merit. As has been stated, the facts were

undisputed and the question of probable cause or want of probable cause was for the court to decide as a question of law. In deciding that question the court did not invade the province of the jury and did not deny to the plaintiff a trial by jury, since there were no facts relating to probable cause which were in dispute.

*By the Court.*—Judgment affirmed.